UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN JAMES THODE,

        Plaintiff,                         Civil Action No. 15-10988
                                                    Honorable Sean F. Cox
v.                                                     Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]

Plaintiff Norman Thode ("Thode") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Thode is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [10] be GRANTED, Thode's motion for summary judgment [9] be DENIED and, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On February 25, 2010, Thode filed his initial application for DIB, alleging a disability onset date of January 1, 2008. (Tr. 86). The claims were initially denied on July 13, 2010. (*Id.*). Thereafter, Thode filed a timely request for an administrative hearing, which was held on April 6, 2011 before ALJ Mary Ann Poulose. (Tr. 54-82). Thode, who was represented by attorney William K. Christie, testified at the hearing, as did vocational expert Glee Ann L. Kehr. (*Id.*). In a written decision dated June 13, 2011, the ALJ determined that Thode is not disabled. (Tr. 86-95). On December 28, 2011, the Appeals Council denied review. (Tr. 99-104).

On February 17, 2012, Thode filed the instant application for DIB, alleging a disability onset date of June 14, 2011. (Tr. 10, 105). The claims were initially denied on August 20, 2012. (Tr. 118). Thode then filed a timely request for an administrative hearing, which was held on September 4, 2013 before ALJ Charles Woode. (Tr. 27-53). Thode, who was then represented by attorney Robert Gaecke, testified at the hearing, as did vocational expert Zachary A. Matthews. (*Id.*). In a written decision dated October 22, 2013, the ALJ determined that Thode is not disabled. (Tr. 10-21). On January 26, 2015, the Appeals Council denied review. (Tr. 1-4). Thode filed for judicial review of the final decision on March 16, 2015. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

2

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . [i]f the analysis [then] reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

*1.     Disability and Function Reports*

In an undated disability report, Thode indicated that he suffers from carpal tunnel

3

syndrome, heart problems, high blood pressure, stomach issues, muscle problems, diabetes, herniated discs in his back, and learning disabilities. (Tr. 236). Thode reported that he stopped working on January 31, 2009, as a result of these conditions. (*Id.*). With respect to his education level, Thode completed the eleventh grade and did not pursue a trade or any specialized job training. (Tr. 237). Prior to stopping work, Thode was employed as a roofing and construction worker. (*Id.*). Thode identified several medical facilities that had treated him for the foregoing physical and mental impairments. (Tr. 239-240). At the time of the report, Thode was taking multiple medications including Tramadol (for pain), Vicodin (for back pain), Zofran (for stomach problems), Robaxin (for muscle pain), Lisinoril (for blood pressure), Citalopram (for depression) and Tradonze (for insomnia). (Tr. 239).

In a function report dated April 25, 2012, Thode stated that he lives in a house with his family. (Tr. 254). When asked to describe how his conditions have limited his ability to work, Thode indicated that, "I have pain in my back, legs, arms and hands. Doing anything over and over or for a short period of time I get pain. I fall asleep throughout [the] day. I can't lift or bend without pain. I am forgetful, very irritable and anxious. My sleep at night is not good." (Tr. 254). As for daily activities, Thode reported that he "watch[es] television and sleeps throughout the day." (Tr. 255). Thode listed his medications as follows: Vicodin ES, Ultram, Celexa, Lisinopril, Neurontin, Trazadone, Robaxin, Aspirin, and Ibuprofen. (Tr. 261). When asked to describe what he could perform before the onset of his conditions that he can no longer perform, Thode reported that he could no longer "work an eight-hour day and not have pain, I could be at work on time, do work safely, dress myself without help, walk, work on cars lift transmissions, motors – play with my kids." (Tr. 255). His conditions also interfere with his sleep and he sometimes wakes up with pain. (*Id.*).

4

Thode noted that he needs assistance while dressing himself; his wife helps him bathe his back, legs, and feet; and he must sit down after a few minutes of shaving (*Id.*). Thode recounted that his wife ensures that he maintains his personal hygiene and reminds him to take his medicine. (Tr. 256). When he does cook, Thode generally makes sandwiches, microwave items, and snacks. (*Id.*). He reported that he is able to perform minor repairs around his home, but "nothing too heavy or [that] takes [a] long time" as he cannot bend or lift. (Tr. 256-57). Thode stated that his son performs most of the household chores. (Tr. 256).

Thode is able to drive a car for short distances (approximately one or two miles) and go outside alone. (Tr. 257). Thode's wife usually shops for groceries although he will go on monthly trips to the drug store. (*Id.*). Thode reported that he is unable to handle a savings account or use a checkbook because he cannot read or write well. (*Id.*). He indicated, however, that he can count change up to 20 dollars. (*Id.*). Thode reported that he can no longer work on cars as a hobby. (Tr. 258). In regards to social activities, Thode reported that he visits his grandchildren two to three times per week. (*Id.*). His main activities are going to his son's house and doctors' appointments. (*Id.*). He indicated that he does not get along with his neighbors and that he does not have patience for family members. (Tr. 259).

When asked to identify functions impacted by his conditions, Thode checked lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others. (*Id.*). He cannot lift more than 10 pounds or repetitively bend or squat. (*Id.*). Thode stated that he is "a special ed. Person so I don't read, write well at all. I talk with a lisp and I get frustrated." (*Id.*). He is able to walk 20-30 feet before he needs to stop and rest for five to ten minutes. (*Id.*). Thode noted that he is able to concentrate depending on his daily pain level; he

5

does not complete tasks; he has difficulty following written instructions; he has difficulty following spoken instructions; he does not get along with authority figures; he does not handle changes in routine well; and he does not handle stress well. (Tr. 260). Thode also expressed paranoid fears that his neighbors are always watching him. (*Id.*).

        2.      *Thode's Testimony*

At the time of the September 4, 2013 hearing before the ALJ, Thode was living at home with his wife and youngest child. (Tr. 35). He testified that he had been placed in special education classes from the sixth grade until he left school after the eleventh grade. (*Id.*). Thode noted that he has significant problems with reading, math, and writing. (Tr. 35-36). He could not specifically remember when he stopped working, but he believed it was sometime in 2008. (Tr. 36). At his last job, Thode was only able to work four days a week because of problems with his back and legs. (*Id.*). Thode stated that he cannot sit or stand for more than a half hour and that he cannot bend, stoop, or twist. (Tr. 37). He reported that he suffers from, among other things, "spurs and arthritis and stuff in my back and a herniated disc . . . and bad muscle cramps in my legs." (Tr. 37-38). Thode also indicated that, at the time of the hearing, he was suffering from pain in his lower left hip. (*Id.*).

On direct examination, Thode recounted that he suffered from worsening insomnia, leg pain, and back pain since his prior hearing. (Tr. 39). In addition, Thode had recently been diagnosed with bipolar disorder, although he testified to exhibiting symptoms of bipolarity in the summer of 2011 and at his past work in 2008. (Tr. 40-41). He indicated that he had been dismissed from other jobs due to his behavioral issues. (Tr. 41-42). Thode stated that he could no longer perform many of the household chores to which he was accustomed. (Tr. 42). His depression also worsened after his initial claim for benefits had been denied in June 2011. (Tr.

6

43). As a result, he did not believe that he could work at a job for eight hours a day, five days a week due to his mental and physical impairments. (Tr. 47).

### 3. Medical Evidence

The Court has thoroughly reviewed the record, and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

### 4. Vocational Expert's Testimony

Zachary A. Matthews testified as an independent vocational expert ("VE"). (Tr. 49-52). The ALJ initially asked the VE to describe Thode's past relevant work. (Tr. 50). The VE responded that Thode performed work as a roofer (skilled with a medium exertional level) and a construction worker (unskilled with a heavy exertional level). (*Id.*). The ALJ posed several hypotheticals to the VE, which were progressively more restrictive. (Tr. 50-52). First, the ALJ asked the VE to imagine a claimant of Thode's age, education, and work experience, who was limited to medium work; occasional stooping, kneeling, crouching, crawling, climbing (ramps, stairs, ladders, ropes, or scaffolds) and could remember simple, routine, and repetitive tasks. (Tr. 50). The VE testified that the hypothetical individual would be unable to perform Thode's past relevant work as a roofer or construction worker, but could perform the positions of sorter (115,000 jobs nationwide; 5,200 jobs regionally); assembler (272,000 jobs nationwide; 10,000 jobs regionally); and bagger (256,000 jobs nationwide; 7,500 regionally). (Tr. 51-52). The ALJ then inquired as to whether the hypothetical individual would be able to perform any work if "due to a combination of impairments, the individual would be unable to work for eight hours a day, five days a week or [an] equivalent work schedule." (Tr. 52). The VE answered that such a limitation would be work preclusive and added that his testimony comported with the Dictionary of Occupational Titles and his professional experience. (Tr. 52).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Thode is not disabled under the Act. At Step One, the ALJ found that Thode had not engaged in substantial gainful activity from the alleged onset date of June 14, 2011. (Tr. 12). At Step Two, the ALJ found that Thode has the severe impairments of bulging disc in the lumbar spine, dysthymia, phonological disorder and cognitive impairment. (*Id.*). At Step Three, the ALJ found that Thode's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 14-16). The ALJ then assessed Thode's residual functional capacity ("RFC"), concluding that he is capable of performing medium work with the following limitations: occasional balancing, stooping, kneeling, crouching, crawling, and occasional climbing of stairs, ladders, ropes, or scaffolds. (Tr. 16). The ALJ noted that Thode can understand, remember, and carry out simple, routine and repetitive tasks. (*Id.*).

At Step Four, the ALJ determined that Thode is unable to perform any past relevant work. (Tr. 19-20). At Step Five, based in part on the VE's testimony, the ALJ concluded that Thode is capable of performing a significant number of jobs that exist in the national economy. (Tr. 20-21). As a result, the ALJ concluded that Thode is not disabled under the Act. (Tr. 21).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

8

647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Thode v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v.*

9

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F. Analysis

At Step Three of his analysis, the ALJ concluded that "the 'paragraph C' criteria of listing 12.05 were not met because [Thode] did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 16). Before this Court, Thode advances only one argument: that the ALJ erred in concluding that he does not meet the criteria for Listing 12.05 (Intellectual Disability). (Doc. #9 at 4-10). Thode's Step Three argument is potentially dispositive because an adult whose impairments meet or medically equal the criteria of a Listing is presumed to be under a disability and is granted benefits without further evaluation. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). For the reasons discussed below, however, the Court finds that Thode's argument lacks merit.

Listing 12.05 describes the elements necessary to establish disability based on intellectual disability. The ALJ's conclusion that Thode does not meet the criteria of Listing 12.05(C) is at issue in this case. That provision states, in relevant part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Therefore, in order to satisfy Listing 12.05(C),

10

Thode must show: (1) that he experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22 (i.e., the diagnostic description); (2) that he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) that he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See West v. Comm'r Soc. Sec.*, 240 F. App'x 692, 697-98 (6th Cir. 2007).

Thode specifically contends that "[t]he ALJ's decision is deficient because it fails to address the first requirement of Listing 12.05(C): whether plaintiff met the diagnostic description in the introductory paragraph." (Doc. #9 at 6). This argument is unavailing for two reasons.

First, the ALJ did, in fact, discuss whether Thode met the criteria set forth in the introductory paragraph to Listing 12.05(C), and her finding that he did not is supported by substantial evidence. After acknowledging that Thode "did receive [IQ] scores within the identified range (Verbal Intelligence 68, Full Scale 67) and does have other severe physical and mental impairments," the ALJ found that "his ability to engage in substantial gainful activity indicates that the claimant does not have deficits that rise to listing-level severity." (Tr. 16). In other words, the ALJ concluded that Thode's past demonstrated ability to perform substantial gainful activity (some of which he performed at the skilled level) precluded a finding that he suffered from "deficits in adaptive functioning" as required under the introductory paragraph to Listing 12.05(C). *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) (holding that the performance of semiskilled work did not comport with Listing 12.05(C) requirements); *Carter v. Comm'r of Soc. Sec.*, No. 10-804, 2012 U.S. Dist. LEXIS 40828, at *18 (W.D. Mich. Mar. 26, 2012) ("Plaintiff's ability to perform substantial gainful activity is relevant to whether she had the deficits in adaptive functioning necessary to meet listing 12.05's

11

diagnostic description.").

Second, Thode ignores the fact that ALJ Mary Ann Poulose, who conducted the prior April 6, 2011 hearing, already determined that he did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 12.05(C). In her June 13, 2011 written decision, ALJ Poulose concluded that Thode had not met the requirements of Listing 12.05(C) because:

> [a]lthough the claimant achieved a verbal IQ score of 68 and full-scale IQ score of 67, and has other severe physical and mental impairments, a review of his earning records reveals the claimant was able to engage in substantial gainful activity, within the meaning of the Regulations, despite his limitations. The undersigned finds the claimant's ability to engage in substantial gainful activity indicates that the claimant does not experience deficits in his adaptive functioning.

(Tr. 91). Thus, in the absence of "new and material evidence" to the contrary, any reconsideration of this same issue would be barred by the doctrine of *res judicata*. *See* SSAR 98-4(6), 1998 SSR LEXIS 5, at *9 (Jun. 1, 1998) ("When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . ."); *see also Partin v. Comm'r of Soc. Sec.*, No. 12-74, 2013 U.S. Dist. LEXIS 140526, at *10 (E.D. Ky. Sep. 30, 2013) (applying *res judicata* to a prior Listing 12.05(C) determination even though the ALJ did not expressly state "her intent to rely on *res judicata* in the section devoted to the Step Three analysis . . .").

In this regard, Thode fails to highlight any new and material evidence in the record that would otherwise alter the original analysis under Listing 12.05(C). Even in response to the ALJ

Charles Woode's inquiry, Thode's counsel admitted that he could not identify "any particular medical record" to support the conclusion that Thode satisfied all of the elements in the introductory paragraph to Listing 12.05(C). (Tr. 31). And notably, Leonard C. Balunas, Ph.D., the state agency consultant, opined that "[t]here were no material changes" in between the date of the prior June 13, 2011 decision and December 31, 2011, the date Thode was last insured. (Tr. 112).

Moreover, to the extent Thode submitted additional medical evidence in the form of Hassan Almaat, M.D.'s June 14, 2012 psychiatric evaluation (Tr. 461-62), the report does not establish that Thode met the requirements of the introductory paragraph to Listing 12.05(C). While Dr. Almaat diagnosed Thode with bipolar affective disorder and indicated that his "[j]udgment and insight were poor to fair," he found that Thode's "[t]hought process was coherent" and that his "[c]ognition was intact." (Tr. 462).

In sum, the doctrine of *res judiciata* bars reconsideration of ALJ Poulose's finding that Thode did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 12.05(C).

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment [10] be GRANTED, Thode's motion for summary judgment [9] be DENIED, and the Commissioner's decision be AFFIRMED.

Dated: November 24, 2015  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 24, 2015.

                                        s/Eddrey O. Butts
                                        EDDREY O. BUTTS
                                        Case Manager